ARTHUR W. GUTHRIE AND OTHERS *vs.* ELISHA WHEELER.

A testator, after giving a legacy to his widow, gave all his property to *W*, "absolutely and in fee, subject to the following trusts"; the trusts being the payment of the income to his widow during her life and after her death to two of his brothers during their lives. Held that *W* took the fee for his own benefit, subject to the trusts.

The two brothers named and one other brother were the sole heirs at law of the testator; *W* was not a relative; a clause in the will "authorized" *W* to pay the expenses of prosecuting a pending litigation out of the estate; *W* and one *C* were made executors; and the will was inartificially drawn. Held that all these facts were not sufficient to warrant a construction of the will that should make *W* merely a trustee for the purposes named, and leave the fee, after the expiration of the trust, to go to the heirs at law.

PETITION for an injunction; brought to the Superior Court in New Haven County. The petitioners were Albert W. Guthrie, Ebenezer Guthrie and John B. Guthrie. The principal averments of the petition were as follows:—

That the petitioners are the sole surviving brothers of William Guthrie, late of &c., deceased; that the said William left no living sisters, and no heirs of his body, and no living issue or heirs of any deceased brother or sister, and that the petitioners are his sole heirs at law; that he left a widow, Polly Ann Guthrie, living, and who still lives; that he died on the 18th day of December, 1865; that, at the time of his decease, he left the following will dated November 28th, 1865:

"In the name of God, Amen. I, William Guthrie, do make and ordain this my last will and testament in manner and form following:

"1st. I will that all my just debts and all lawful charges against my estate be paid by my executors hereinafter named. It is also my will that my wearing apparel be equally divided between Albert Guthrie and John B. Guthrie.

"2d. I authorize Elisha Wheeler, hereinafter named, to prosecute and defend all suits at law that may be pending, where I am concerned or in any wise interested as a party at the time of my decease. And I hereby authorize him to pay the expenses of such suits out of my estate.

" 3d. I give, demise and bequeath to my beloved wife, Polly Ann Guthrie, all my household furniture· and house-keeping articles, to be hers forever.

" 4th. I give, demise and bequeath all of my estate, both real and personal and mixed, (excepting the said legacy to my said wife hereinbefore named,) to Elisha Wheeler, absolutely and in fee simple, subject to the following trusts, viz. : *First.* The said Elisha Wheeler shall pay to my wife, Polly Ann Guthrie, annually, the entire rents and profits of the said entire estate, which may remain after said debts and charges have been paid, so long as she lives, or to occupy and improve said entire estate during her natural life. *Second.* At and after the decease of my said wife, then I direct the said Elisha Wheeler to pay to my brother, Albert Guthrie, the one-half of the rents and profits of my said estate annually during his life, and likewise to pay the other half of said rents and profits to my brother, John B. Guthrie, annually, during his life.

" *Third.* I direct that my executors, hereinafter named, shall not be required to give bonds to exceed the sum of six thousand dollars.

" *Lastly,* I constitute and appoint Elisha Wheeler and Marshall S. Clark, of Southbury, executors of this my last will and testament.

" In witness whereof, &c."

That said will was on the 30th day of December, 1865, duly proved and approved in the probate court of the district of Southbury within which the testator had resided ; that the estate left by the said William Guthrie, and placed in trust under the provisions of said will, consists of both real and personal estate, and amounts to the sum of $33,631, as shown by the inventory and appraisement of the estate on file in the probate court ; that, by the provisions of said will, all of said estate is placed in the hands of Elisha Wheeler as trustee, for the benefit of the said Polly Ann Guthrie, Albert Guthrie, and John B. Guthrie, during their lives, and that the said Elisha Wheeler and his heirs have no right to or interest in said estate, or any part of it, except as trustee,

and that after the termination of the life estates named in said will, and the fulfillment of the trusts therein specified, the fee of said property reverts to the petitioners, the sole legal heirs of said William Guthrie.

That the said Elisha Wheeler claims that, under the provisions of said will, he is the sole legal owner of the fee of all of said estate, after the termination of the lives of the said Polly Ann Guthrie, Albert Guthrie, and John B. Guthrie, and that he is now the legal owner and holder of all of said estate of every name and kind, charged only with the payment of the rents, profits and income of said estates during the lives of the said Polly Ann, Albert, and John B. Guthrie, and that he has full right and power to sell all of said property subject to said trusts; and that he threatens to make such sale of such estate subject only to said life estates; that the sale of such estate, by said Wheeler, subject to said life estates, would greatly injure your petitioners, and jeopardize their said inheritance and reversionary right in said property, and that the claim of the said Wheeler to be the owner of all said property, subject only to said life estates, depreciates in value said inheritance and reversionary interest, and prevents the petitioners from selling and disposing of their said reversionary interest, or pledging the same, or in any manner realizing the true and just value of said inheritance; and that the petitioners are in danger of being compelled to expend large sums of money to recover said property after the termination of said life estates, and that they are without adequate remedy at law.

Your petitioners therefore pray the court to order and decree that the said Elisha Wheeler shall be enjoined from claiming and holding himself out to the world as the owner in fee of said estate, after the termination of said life estates, and from selling, or offering to sell and dispose of said estate and fee subject to said life estates, or in any other manner to dispose of or convey said estate or any interest therein.

The respondent demurred to the petition, and the case was reserved, upon the demurrer, for the advice of this court.

*H. B. Harrison* and *H. B. Munson,* in support of the demurrer.

1. The testator was undertaking to dispose of *all* his estate, finally and absolutely. Courts will not construe a will in such a way as to leave part of the estate intestate, unless such a construction is " absolutely forced upon them." 2 Redf. on Wills, 442.

2. The petitioners claim that the will, by its implication, gives the whole estate, substantially, to them, as heirs at law. If the testator had intended such a gift the will would have said so. On the contrary it does not mention the name of Ebenezer Guthrie, and states specifically what it gives to Albert and John. If the testator had intended to give more to the last two he would not have stopped there.

3. They claim also that the will gives nothing to the respondent. But the testator in his will says that, " subject to " certain specified trusts, he gives " all " his estate, " real, personal and mixed," to Elisha Wheeler, " absolutely and in fee simple." Plainer and stronger words could not be used.

4. The devise to Wheeler is not in terms, and therefore not in meaning, a devise to him simply " as trustee." Neither is it, in terms or in meaning, a devise to him simply " upon " certain trusts. It is in terms and meaning a devise to him personally—by his name only, without any addition indicating that he takes in any special capacity. And it is a devise to him, in terms and in meaning, of " all " the estate, " absolutely and in fee simple," " *subject to* " (that is, charged with) certain specified and strictly limited trusts. The words " subject to " are familiar and well understood. They have their peculiar shade of meaning. No other word can be substituted for them. The testator must be presumed to have known and felt their special significance. He selected them in preference to the word " upon ; " and they must therefore be interpreted in that precise sense in which their meaning *differs* from the meaning of the word " upon." The precise distinction which exists in meaning and legal effect between the words " subject to " and the word " upon " in cases like this, has been repeatedly pointed out and insisted upon by

courts and commentators, and the words " subject to" have uniformly received in such cases the construction which we put upon them.   1 Jarman on Wills, (2d Am. ed.,) 457, 460, 462; 1 Hill on Trustees, 118, 120; Tiff. & Bul. on Trustees, 94; *King* v. *Denison*, 1 Ves. & B., 260; *Southouse* v. *Bate*, 2 id., 396; *Cook* v. *Hutchinson*, 1 Keen, 42; *Hughes* v. *Evans*, 13 Sim., 496; *Wood* v. *Cox*, 2 Mylne & Cr., 684; *Cole* v. *Cole*, 53 Barb., 607; *Healey* v. *Toppan*, 45 N. Hamp., 243; *Clapp* v. *Clapp*, 6 R. Isl., 129; *Pierce* v. *McKeehan*, 3 Watts & S., 280; *Fox* v. *Phelps*, 20 Wend., 441; *Treat* v. *Treat*, 35 Conn., 212, 214.

*J. S. Beach* and *Watrous*, contra.

The testator left no children, and no heirs at law but his three brothers, the petitioners.   The respondent is not an heir, nor in any way related to the testator, and the case discloses no reason why the testator should desire to disinherit his blood relations in favor of this stranger.   Under these circumstances the law *inclines* to favor the heirs as against a stranger, if, in view of the language used, this can. be done.   That they *may be* cut off is conceded; that they. would be is unnatural, and therefore that they have been is. improbable *a priori*.   The respondent claims that under. the. language of the will, all the estate not exhausted by the express *trusts* belongs to him. . Our claim, on the contrary;. is that he holds this undisposed-of portion of the estate as a. resulting *trust* for the heirs at law.   The question then is,. has the testator clearly indicated in this will, that the respondent should have, as his own, the residue, which. is the great bulk of the estate, instead of his own brothers and their· ·children?   Perry on Trusts, § 151; *Melvin* v. *Halloway*, 2. Houst., 527; *Kellett* v. *Kellett*, 3 Dow, 248; *Robinson* v.. *Taylor*, 2 Brown Ch. R., 589, 595; *Hobart* v. *Countess of* *Suffolk*, 2 Vern., 644.

1.   It is to be observed that the will. is not drawn by al skilled hand.  Probably no lawyer would begin a will as this is begun, or put the disposal of a part of the estate into· the item which provides for the payment of debts, or use;

" demise " for " devise," or use either in disposing of *personal* estate, or say " subject to the following trusts," instead of " upon the following trusts," if we are right in our construction, or " subject to the following charges or payments," if we are not. Nor would one experienced in drawing wills designate the clause relieving the executors from bonds as if one of the *trusts* of the will. The court can see under the claim he now makes, that the respondent had a large interest in the drawing of it, and can see also that he knew about it when it was drawn, for the second clause would not be likely to be there without his knowledge that it was to be.

2. If the respondent was to be the owner of all this large estate, subject only to the express trusts named in it, why was he "*authorized*" to pay out of it the expense of certain suits by the second clause? If the estate was his, no such authorization was needed. He could pay those expenses, of course, out of the estate, if he chose to, or out of his private estate. It would be immaterial to him and to the testator which. If the whole estate was, however, *trust* estate, then if he was to prosecute suits without the consent of his co-executor, and the beneficiaries, or heirs at law, it might be important for his protection to have this authority expressly given.

3. If this estate was all given to the respondent, subject merely to certain specific charges or payments, why was Clark made co-executor? Not surely to see that the beneficiaries under the trust clauses got their estates, for an executor has nothing to do with that; nor to look after the collection of claims, or the payment of debts. The respondent, upon his own theory, had a deeper interest to look after both these than anybody else could have. If he were alone trustee and executor, or if he and Clark were both trustees and executors, the claim that the trustees took a beneficial interest in this estate would be much stronger both in reason and upon authority. *Dawson* v. *Clarke*, 18 Ves., 247.

4. But we deny that the claim, " subject to the following trusts," merely creates a charge upon this estate, as the first clause in regard to payment of debts does, and as,

perhaps, the second in regard to expense of litigation does. This clause means the same as if it read " upon the following trusts," " in trust as follows," " for the following trusts," " for the following purposes," " subject to the following disposition thereof," " in trust as follows,"—with any one of which forms of expression the trustee would not take a beneficial interest in the estate, but would hold it as a resulting trust for the heirs at law. This large estate can not be diverted from its natural channel upon any such technical ground as an assumed difference between the meaning of the clause " subject to " and the preposition " upon." Perry on Trusts, §§ 152, 153, 155; Tiff. & Bullard on Trusts, 24, 26, 28, 42, 44, 99; Adams' Equity, 32; 2 Story Eq. Jur., § 1200; *Barrs* v. *Fewkes*, 2 Hem. & Mil., 60; *Saltmarsh* v. *Barrett*, 3 DeG., F. & J., 279; *King* v. *Denison*, 1 Ves. & B., 260; *Hill* v. *Bishop of London*, 1 Atk., 619; *Clarke* v. *Hilton*, L. Reps., 2 Eq. Cas., 810.

FOSTER, J.    We think this bill is insufficient and should be dismissed. The plaintiffs fail to show any such interest in the subject matter as entitles them to the relief sought.

The intent of the testator, as gathered from the will itself, the only legitimate mode of ascertaining it, is sufficiently clear.

He gives his wearing apparel to be equally divided between Albert Guthrie and John B. Guthrie. He gives all his household furniture and housekeeping articles to his wife, Polly Ann Guthrie. He then says:—

" I give, demise, and bequeath, all of my estate, both real and personal and mixed, excepting the said legacy to my said wife, hereinbefore named, to Elisha Wheeler, of Southbury, in said New Haven County, absolutely, and in fee simple, subject to the following trusts, viz.: *First.* The said Elisha Wheeler shall pay to my wife, Polly Ann Guthrie, annually, the entire rents and profits of the said entire estate which may remain after said debts and charges have been paid, so long as she lives, or to occupy and improve said entire estate during her natural life. *Second.* At and after the

decease of my said wife, then I direct the said Elisha Wheeler to pay to my brother, Albert Guthrie, the one half of the rents and profits of my said estate, annually, during his life, and likewise to pay the other half of said rents and profits to my brother, John B. Guthrie, annually, during his life."

This is certainly very plain and explicit language. It not only does not require, but does not admit of construction. An estate is given to Elisha Wheeler, " absolutely and in fee simple, subject to the following trusts, viz." [The trusts are then specified]. Now if we hold that Elisha Wheeler takes an estate less than a fee, or a fee encumbered with trusts or conditions in addition to those imposed by the testator, we make a new will. Elisha Wheeler is said to be a stranger in blood, and these plaintiffs are the heirs at law. It may be more wise and more just that they, rather than he, should possess this estate, and it may not be. To the testator the law gave the power of determining that question, and he has determined it. We have no power, if we had the inclination, which we have not, to revise or change that decision.

The Superior Court is advised to dismiss the bill.

In this opinion the other judges concurred ; except PHELPS, J., who did not sit.